James H. SHORTZ, Plaintiff,

v.

CITY OF MONTGOMERY,
et al., Defendants.

No. CIV.A. 02–T–220–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 10, 2003.

A. Wesley Pitters, A. Wesley Pitters, P.C., Montgomery, AL, for James H. Shortz.

James H. Shortz, Montgomery, AL, pro se.

Roger S. Morrow, Wesley Romine, Morrow, Romine & Pearson, P.C., Montgomery, AL, for City of Montgomery.

Misha Y. Mullins, Misha Mullins, LLC, Montgomery, AL, for T.A. Brooks, A.L. Savell.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff James H. Shortz brought this lawsuit against defendants City of Montgomery, Alabama and city police officers T.A. Brooks and A.L. Savell, the latter two being sued in their individual capacities. Shortz charges that, when the defendants arrested him, they violated the fourth and fourteenth amendment to the United States Constitution as enforced through 42 U.S.C.A. § 1983, as well as various state laws. Jurisdiction over Shortz's federal claims is proper under 28 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights); jurisdiction over his supplemental state-law claims is proper under 28 U.S.C.A. § 1367 (supplemental jurisdiction).

This lawsuit is now before the court on the defendants' motions for summary judgment. For the reasons that follow, the motions will be granted as to Shortz's federal claims, and his state-law claims will be dismissed for refiling, if he so chooses, in state court.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTS

On November 4, 2000, Shortz and his wife were in the middle of divorce proceedings. At some point in the day, Shortz's wife called him and told him that she was gathering his belongings and placing them in front of the apartment for him to collect. In response to this, Shortz began to drive home and, on his way, called the Montgomery Police Department (MPD). This was Shortz's first call to the MPD, and his purpose in making the call was to get a supervisory officer to meet him at his apartment so that he could deal with the situation with his wife. Once Shortz got to his complex, he waited for an hour in the parking lot for the MPD. However, when he finally went inside the apartment, he learned that the officer had already been there and left. Although neither party has clearly relayed what occurred when the officer came to the apartment, Shortz's wife was under the impression that she could continue to collect Shortz's possessions and place them in the front of the apartment for him to retrieve.

Sometime later in the day, Shortz again called the MPD and summoned an officer to his house. The parties have not given the court any facts regarding this second call and the MPD's response to it, but no arrest was made.

Later that day, Shortz called the MPD for the third time asking that someone come to his home. Officers Brooks and Savell were dispatched to the Shortz home, and, before arriving there, they were informed by another officer who had responded to an earlier call that this was the third call by Shortz to the MPD that day. While neither side has clearly presented what happened when the officers responded to this call, both officers testified in their depositions that Shortz's wife would take Shortz's clothes out of the closet and dump them in the front hall, where Shortz would then pick them up and put them back in the closet. Officer Savell also testified that Shortz said something to the effect of not being able to control himself because of his anger. Officer Savell also testified that Shortz threatened to rip his wife's clothes off of her, though it is unclear whether this statement was made in this call or in the fourth call. The officers left without making an arrest, but warned the Shortzes that any physical contact between them would justify police intervention.

The officers were again dispatched to the Shortz residence that day, pursuant to a fourth call made by Shortz. When they arrived, they noticed a scratch on Shortz's wife's left hand. There is no indication in the record how big or severe this scratch was, other than the fact that both officers noticed it upon their arrival. When questioned about the scratch, the Shortzes both stated that it was an accident, that it occurred when Shortz's wife was holding onto some of Shortz's clothes and that, when he attempted to take the clothes from her, one of the clothes hangers scratched her hand. Shortz's wife was adamant that she did not want to press any charges, and that the scratch was the result of an accident, but the officers proceeded to arrest Shortz after this incident. Shortz's wife did not sign the complaint against her husband, and she refused to have her injury photographed.

Shortz spent a day and a half in the jail before calling his wife to secure his release on Monday, November 6, 2000. On January 9, 2001, Shortz appeared in Montgomery Municipal Court with his wife, and the municipal judge dismissed the charge after Shortz's wife maintained that she caused the injury to herself.

## III. DISCUSSION

### A. Federal Claims

Shortz claims that his arrest violated the fourth amendment, as embodied in the

fourteenth amendment and enforced through § 1983, because there was no probable cause to arrest him. The individual officers respond that probable cause for the arrest did exist, and, alternatively, they are entitled to qualified immunity because there was at least "arguable" probable cause. The City of Montgomery argues that it is not liable to Shortz because he has not proven that a municipal policy caused the violation, if a violation occurred at all. The liability of the individual officers and the city will be examined separately.

### 1. Individual Liability

■ "In order for probable cause to exist, 'an arrest [must] be objectively reasonable under the totality of the circumstances.' " *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County,* 956 F.2d 1112, 1119 (11th Cir. 1992)). Accordingly, the court must determine whether arresting Shortz was objectively reasonable under the circumstances. The objectively reasonable standard "is met when 'the facts and circumstances within the officer's knowledge of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir.1995)).

■ As the Eleventh Circuit Court of Appeals has stated, a plaintiff in an action under § 1983 asserting a claim for unlawful arrest bears the burden at trial of showing an absence of probable cause. *Rankin,* 133 F.3d at 1436. The allocation of this burden is not different at the summary-judgment stage. *See, e.g., Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993).

■ The officers assert that there was cause to arrest Shortz because he had caused physical injury to his wife. The officers also contend that at some point Shortz threatened to rip his wife's clothes off and that he stated he would no longer be able to control himself. They argue that these actions and statements by Shortz (combined with the fact that he and his wife were in the process of obtaining a divorce and that to the officers, the situation appeared to be escalating when compared to the prior calls) gave them probable cause to arrest Shortz for harassment. 1975 Alabama Code § 13A–11–8(a)(1) ("A person commits the crime of harassment, if with intent to harass, annoy or alarm another person, he … subjects him to physical contact.").

Shortz contends that the officers lacked probable cause to believe that he intended to harass, annoy or alarm his wife, an element of the harassment charge. He asserts that this was readily apparent to the officers because both he and his wife told them the scratch was the result of an accident. He also contends that the officers could not have had probable cause to believe he had intent to harass her because he initiated the phone calls that brought the officers to the house. Finally, he argues that the dismissal of charges by the municipal judge bolsters his argument that there was no probable cause to believe he had intent to harass his wife.

Although it is uncontested that both Shortz and his wife told the officers that the scratch was caused unintentionally, Shortz has not demonstrated that this defeats the finding of probable cause made by the officers. First, both officers testified that the scratch itself was important to their finding of probable cause, but just as important was the fact that the scratch demonstrated that Shortz's actions had escalated from merely taking the clothes his wife had placed in the front of the apartment and returning them to the closet to

actively grabbing clothes from his wife's hands. It was this escalation in action that the officers believed demonstrated Shortz's intent to harass his wife and justified their arresting him. Therefore, although the injury may have been caused accidentally, the fact that Shortz took something from his wife's hands in a manner that did cause injury was enough for the officers to infer that he did have the intent to harass, annoy, or alarm her.

Second, the officers stated that, although Shortz's wife agreed that the scratch was unintentionally inflicted, her statement did not convince them that the scratch was in fact accidentally inflicted. Officer Savell testified that she believed that Shortz was trying to influence his wife into saying it was an accident, a practice which is common in domestic disputes. Therefore, although a factor in the probable-cause calculus, the Shortzes' denial that the scratch was intentionally caused did not defeat the probable-cause finding by the officers. *See, e.g., Dahl v. Holley,* 312 F.3d 1228, 1234 (11th Cir.2002) ("[A]rresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that the offense has been committed.") Indeed, based on the totality of the circumstances (which included a threat by Shortz to his wife, indications by Shortz that he could no longer control himself, and an escalation in the situation), the officers were justified in believing Shortz intended to harass his wife, and thus the officers acted reasonably when they arrested Shortz.

Shortz also argues that, because he instigated contact with the MPD he could not have been the aggressor in this situa-tion, and, therefore, could not have had the intent to harass his wife. Again, although the fact that Shortz was the person calling the MPD could have played a part in the officers' probable-cause calculus, it does not defeat the reasonableness of the officers' actions. Based on a totality of the circumstances, and the facts the officers knew at the time of the arrest, including the fact that it was Shortz's wife that was injured and that it was Shortz making threats and whose behavior seemed to be escalating, it was not unreasonable for the officers to apprehend Shortz. The officers did not have to be convinced that Shortz was committing harassment in order to arrest him; rather they only needed more than mere suspicion, which was provided by the facts available to them at the time of the arrest, irrespective of which party contacted the MPD. *See, e.g., Bailey v. Bd. of County Comm'rs of Alachua County,* 956 F.2d 1112, 1119 (11th Cir.1992) (holding probable cause satisfied by less than convincing proof but more than mere suspicion).

 Finally, Shortz's reliance on the eventual dismissal of the charges to support his contention the officers did not have probable cause to arrest him is misplaced. *Kelly v. Serna,* 87 F.3d 1235, 1241 (11th Cir.1996) ("There is a substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause."); *United States v. Seay,* 432 F.2d 395, 400 (5th Cir.1970) (determination of whether probable cause to arrest existed does not depend upon whether defendants were eventually convicted).[1] Thus, the decision to dismiss the charges against Shortz does not mean

---

1. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding pre-cedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

that the decision to detain him was without basis in law.

Shortz further argues that there was insufficient evidence for the officers to make a probable cause finding that he had any *intent* to harass his wife, one of the elements of harassment, for which he was arrested. As indicated in the discussion above, the court believes that the officers did have enough evidence as to Shortz's intent to find probable cause for the arrest; but, even if they did not, the absence of evidence on this one element of the crime does not defeat probable cause to make the arrest. *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir.2002) ("That the officers had no specific evidence as to this element, such as would convict Dahl at trial, did not prevent them from having probable cause to make the arrest.") In this case, it was objectively reasonable for the officers to arrest Shortz based on the totality of the circumstances. Therefore, no fourth-amendment violation occurred. Summary judgment will be granted in favor of the individual officers in this case.

### 2. Municipal Liability

The court's conclusion that there was no violation of Shortz's fourth-amendment right precludes a finding of liability on the part of the city. Nevertheless, even were summary judgment not due on the underlying merits of Shortz's claim for illegal arrest, he has not met the requirements under § 1983 to hold the city liable for failure to train its officers.

■ For liability to attach, Shortz must show that the governmental employees' unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or else is "visited pursuant to government 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Monell v. Dep't. of Soc. Servs.*, 436 U.S.

658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). In failure-to-train cases, this requires a showing that the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

■ Shortz has presented no evidence that the MPD's domestic-violence policy is unconstitutional. Nor has he presented any evidence showing that the MPD has failed to train its officers adequately in carrying out that policy. Shortz has not cited any other instances where officers lacked probable cause to arrest in a domestic dispute; moreover, this one instance involving his own arrest does not, by itself, show that there is a policy. *See, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Thus, summary judgment will be entered in favor of the city on this basis as well.

### B. State–Law Claims

Shortz also claims that the city and the officers are liable under state law for malicious prosecution, false imprisonment, assault and battery, wantonness, and municipal tort liability.

28 U.S.C.A. § 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims over which this court had original jurisdiction have now been resolved against Shortz, the court will dismiss the state-law claims, albeit without prejudice, *see* 28 U.S.C.A. § 1367(c)(3); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *L.S.T., Inc. v. Crow*, 49 F.3d 679,

685 (11th Cir.1995), which dismissal should not work to Shortz's disadvantage.[2]

## IV. CONCLUSION

Because Shortz has not carried his burden to demonstrate that the individual officers and the city are liable on his federal claims, summary judgment will be entered in favor of these defendants on his federal claims. And, in the absence of a federal claim in this case, Shortz's state-law claims will be dismissed without prejudice.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motions for summary judgment, filed by defendant City of Montgomery, Alabama on November 22 and 27, 2002 (doc. nos. 12 & 14), and the motion for summary judgment, filed by defendants T.A. Brooks and A.L. Savell, on December 6, 2002 (doc. no. 17), are granted as to plaintiff James H. Shortz's federal claims.

(2) Judgment is entered in favor of defendants City of Montgomery, Brooks, and Savell and against plaintiff Shortz on plaintiff Shortz's federal claims, with plaintiff Shortz taking nothing by his complaint on these claims.

It is further ORDERED that plaintiff Shortz's remaining state-law claims are dismissed without prejudice pursuant to 28 U.S.C.A. § 1367.

It is further ORDERED that costs are taxed against plaintiff Shortz, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

---

**2.** Section 1367(d) provides for at least a 30–day tolling of any applicable statute of limitations so as to allow a plaintiff to refile its claim in state court. The section states:

"The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is volun-tarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."